## BERRY *v.* SOUTHERN RAILWAY COMPANY.

Where three successive verdicts in favor of the plaintiff were set aside, the last order stating that it was granted with great reluctance, inasmuch as the presiding judge had set aside two former verdicts, but that he felt compelled to set aside the verdict in the plaintiff's favor and grant a new trial because in his opinion the defendant's testimony overcame the presumption of negligence against the defendant, that plaintiff's testimony was not in sufficient conflict with that of the defendant to authorize the verdict, and that he would not have set aside the third verdict except for that reason; the evidence being in fact sufficient for that purpose, such third grant of a new trial was erroneous.

Submitted June 5,—Decided August 9, 1906.

Action for damages. Before Judge Roan. Clayton superior court.   November 8, 1905.

*Joseph W. & John D. Humphries* and *W. T. Kimsey,* for plaintiff.

*John B. Hutcheson* and *Lamar Rucker,* for defendant.

LUMPKIN, J.   Berry brought suit against the Southern Railway Company for killing a cow. Thrice the presiding judge set aside a verdict for the plaintiff. The last order granted by him was in the following terms: "After considering the motion for a new trial in the above-stated case, I feel compelled to set aside the verdict in plaintiff's favor and grant a new trial, because, in my opinion, defendant's testimony overcomes the presumption of negligence

against the defendant, and plaintiff's testimony is not in sufficient conflict with that of the defendant to authorize the verdict. It is with reluctance that I set aside this verdict, because I have already set aside two previous verdicts in plaintiff's favor; and would not set aside this third verdict in plaintiff's favor except for the reasons above stated." It is apparent from this order that the presiding judge, as matter of law, did not think that there was sufficient evidence on behalf of the plaintiff in conflict with that of the defendant, when taken in connection with the presumption arising against the defendant from proof of the killing of the cow, to sustain a verdict for the plaintiff. He acted with reluctance, and only because he felt compelled, under the view thus stated, to again set aside the verdict. The defendant admitted killing the cow, ·and its value, and assumed the burden -of proof. The engineer testified that when he first saw the cow the engine was running at the rate of about thirty-five miles an hour, a customary speed; that she was about three hundred yards distant, and was grazing about fifteen feet from the track; that when he was within about seventy-five yards of her she started towards the track, and he at once applied the brakes and blew the stock alarm, "and just as she got to the track the engine and cow met at the same time. She stepped on the track just immediately in front of the engine. I had gotten down to a slow rate of speed at that time, but it was impossible for me to stop before striking the cow." He also stated, that, after he saw the cow was moving towards the track, he did all that he could to stop the engine; that when the cow was struck the engine was moving about five to eight miles an hour; that he could see down the track at that point for about three quarters of a mile, and that he could have stopped the train within something over a hundred yards when running at the usual speed; that there was one fence around there but not immediately beside where the cow was struck; that she was north of the fence; that it didn't "seem to him like there were very much ditches there." The fireman corroborated the testimony of the engineer as to having first seen the cow at a distance of from two hundred and seventy-five to three hundred yards away; and testified that she was fifteen or twenty feet from the track; that the engine was within from fifty to seventy-five yards of her when she started towards the track; that the engineer applied the brakes and the fireman rang the bell; that

the brakes were in good order, and that the engine was running at the rate of about six or eight miles an hour when the cow was struck, and it was impossible to stop the train and avoid the collision when she started toward the track. On cross-examination he testified that "below where we struck the cow is a wire fence. I reckon it runs in 25 or 30 feet of the track. I didn't examine to see how close it was. . . There was no trouble about stopping the train before you reached her from the time you first saw her. I suppose I could have stopped or slackened it so I could have had it under control even by that time." A witness for the plaintiff testified that "at this particular time when the train hit the cow I don't know how fast it was running, but about as fast as it usually ran. It didn't seem to check speed, from the way I seen it hit the cow. When it hit the cow it didn't stop. They blowed and kept on." On cross-examination he admitted that he had never run an engine, and did not know how fast they ran at any time; and didn't know anything about the time, and didn't know whether the train was running ten, fifty, or seventy-five miles an hour. Other evidence for the plaintiff tended to show, that there were ditches extending alongside of the railroad, made to complete the embankment, which were four or five feet wide and two and a half or three feet deep, containing mud and water, and extending to within six or seven feet of the cross-ties; that on one side there was a pasture of four or five acres fenced in with barbed wire; that the fence was not over about fourteen feet from the railroad, and about a foot from the ditch. The plaintiff testified that his cows did not return home, and he went to look for them; that he found where they had gone out of his pasture, and followed their tracks part of the way towards the bottom; that when he arrived at a point where he could see the railroad, he saw the cows upon it; that at that point he could not go straight to the track without crossing the ditch, and went some distance down the railroad in order to get upon the the track; that he had discovered by their tracks where the cows had gone upon the railroad at the upper end of the ditches. "I tracked them on down the track; there was the tracks where they had grazed around. They went down the railroad track." He stated that another cow belonging to one Berry, which was also hurt, was standing very close to the track, and his cow was "down below her a piece; that Berry's cow was right opposite the ten-acre

field, and was about opposite the middle of the pasture, which was enclosed by the barbed wire fence. He drove the cows below the ten-acre field in order to get them away from the track. "They came on the railroad just as I told you on Mr. Terrell's land. It would be from Aunt Mensey's pasture fence there between 100 and 150 yards."

It is unnecessary to quote further from the testimony, to show that there was a conflict both as to whether the speed of the train was slackened, and whether the cow in fact came on the track as stated by the engineer and fireman. There was evidence in regard to the tracks of the cows, the location of the accident relatively to a wire fence and ditches, tending to show that it was improbable, if not impossible, for them to have been standing at a distance of about fifteen feet from the track, and to have gone straight to it so as to arrive at the point of collision just as the engine did so; and that in fact they went upon the track at a point some distance above the place of collision, and were grazing down the track when struck. Coupling this evidence with that as to the straightness of the track, the distance at which a cow could have been seen; the distance within which the engine could have been stopped, the admission that the defendant killed the cow, and that she was of the value claimed, we can not agree with our learned brother of the trial court that he was constrained to set aside a third verdict. There was sufficient evidence to support such a verdict, and his ruling to the contrary was erroneous. See *Darien R. Co.* v. *Thomas,* 125 *Ga.* 801.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*